DETROIT BANK v. BRADFIELD.

1. APPEAL AND ERROR—INTERPLEADER—GIFTS—DELIVERY—EVIDENCE.
   In bank's interpleader suit to determine ownership of funds as between administrator of deceased's estate and parties claiming under assignments of savings account, *de novo* review of the testimony *held*, to require concurrence in findings of trial judge that delivery of assignments with the bankbook was not complete and irrevocable before death of depositor and that latter had attempted to make a testamentary disposition of his property without fully complying with the laws of the State with respect thereto.

2. SAME—DE NOVO REVIEW—EVIDENCE.
   While the Supreme Court hears chancery cases *de novo*, it does weigh all the evidence, recognizing that in disputed questions of fact, the trial court has an advantage in being

———————

REFERENCES FOR POINTS IN HEADNOTES

[3, 4] 24 Am. Jur., Gifts, §§ 100, 104, 107.
[3, 4] Gift of savings deposit by delivery of passbook. 40 A.L.R. 1249, supplemented in 84 A.L.R. 558.
[4] 24 Am. Jur., Gifts, §§ 2, 12, 40, 44.
[5] 24 Am. Jur., Gifts, § 43.
[6] 24 Am. Jur., Gifts, § 131.
[6] Declarations or admissions by decedent while in possession of personal property that it belonged to another as sufficient evidence of latter's title in absence of sufficient evidence of gift or other transfer by decedent. 98 A.L.R. 755.
[7] 30 Am. Jur., Interpleader, § 5.
[7] Right of bank to interplead rival claimants to deposit. 60 A.L.R. 719.

3. BANKS AND BANKING—SAVINGS DEPOSIT—ASSIGNMENT—GIFTS—DELIVERY.

Delivery of assignments of savings bank account and the bankbook after death of the depositor would not constitute valid gifts *inter vivos*.

4. GIFTS—INTER VIVOS—DELIVERY.

To constitute a valid gift *inter vivos* there must be a gratuitous and absolute transfer of property from donor to donee, taking effect immediately, and fully executed by a delivery of the property by donor and acceptance thereof by donee.

5. SAME—TRUSTS.

If a gift was intended, but not validly consummated, it should not be perfected on the theory that a trust was created.

6. SAME—CORROBORATIVE TESTIMONY.

Evidence of declarations and admissions of the donor are not sufficient to establish a gift but are only admissible as corroborative of other testimony.

7. EQUITY—JURISDICTION—INTERPLEADER—SAVINGS BANK DEPOSITS—ASSIGNMENTS—DELIVERY—APPEARANCE—PLEADING.

Chancery court had jurisdiction of interpleader suit by which three actions at law which had been brought against plaintiff and in which issue had been joined were enjoined where administrator of deceased depositor's estate claimed ownership of the savings bank accounts which other claimants sought to obtain under assignments, signed but not delivered by depositor before his death, where all parties involved filed appearances and answers and appellants prayed benefit of a cross bill and asked for affirmative relief (3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939).

Appeal from Wayne; Maher (Thomas F.), J. Submitted January 11, 1949. (Docket No. 65, Calendar No. 44,278.) Decided April 11, 1949. Rehearing denied May 18, 1949.

Bill of interpleader by the Detroit Bank against Mary Bradfield and others and Bankers Trust Com-

pany, special administrator and general administrator of the estate of Horace S. Ferguson, deceased, to determine rights of defendants to funds in its possession. Decree for defendant Bankers Trust Company. Defendant Bradfield and others appeal. Affirmed.

*Alonzo D. Pettiford* (*Carl R. Johnson* and *Donald B. Frederick,* of counsel), for defendant Bradfield and others.

*Francis J. McDonald,* and *Miller, Canfield, Paddock & Stone,* for defendant Bankers Trust Company.

BOYLES, J. While the subject matter and the issues involved in this case differ from those presented here and decided herewith, in *Bankers Trust Co.* v. *Bradfield, ante,* 116, the parties here were similarly involved in that case. Both cases were heard in chancery by the same trial judge on successive dates, and the opinions of the trial court in both cases were filed on the same date. Much of the background, the same in both cases, need not be repeated here.

In this case the appellants, Mary Bradfield, Blanch McCall and Floreine Walker, each brought separate suits at law in the circuit court for Wayne county against the Detroit Bank as defendant, based on three separate claims that one Horace S. Ferguson, on September 25, 1945, had made and delivered to each of them a separate assignment and order of withdrawal in the sum of $2,500 out of a savings account then on deposit in said bank in the name of said Horace S. Ferguson. The total thus would amount to a withdrawal of $7,500 out of a savings account of $11,142.50. On that date Ferguson was bedridden and ill, and died 17 days later.

The said assignments or withdrawal orders were not presented to the bank for payment until after his death. When so presented, the bank refused payment and each of the three claimants brought the aforesaid separate suits to recover.

After issue had been joined in each of said suits, the defendant Detroit Bank filed the instant bill of interpleader in chancery setting up that the Bankers Trust Company had been appointed both special and general administrator of the estate of Horace S. Ferguson, deceased, by the probate court for Wayne county; admitting that the defendant Detroit Bank was not the owner of said savings account; stating that it was unable to determine who was the lawful owner of said funds as between the three plaintiffs and the administrator of said estate; and asking that it be allowed to pay said funds into court. The bill of complaint prayed that the suits at law be enjoined and the respective claimants be interpleaded to determine their respective rights. The injunction was issued, the money paid into court, and issue was joined in this case as between appellants and the administrator of the Ferguson estate.

The appellants claimed that their assignments were legal and valid and had been properly delivered to them before Ferguson's death. The administrator for the estate claimed that the so-called assignments or withdrawal slips had not been delivered to appellants before Ferguson's death, that they had obtained possession of them, together with Ferguson's savings account bankbook, after his death, and that the entire bank account was the property of the estate. The parties concede that the assignment slips were not payable except when accompanied by the bankbook.

At the hearing, the proofs disclosed that appellants were not related to Ferguson but were em-

ployees in service in the restaurants owned by Ferguson in Detroit, referred to in *Bankers Trust Co.* v. *Bradfield, supra.* The only testimony adduced by appellants to show delivery of the assignments or withdrawal slips and bankbook to them during Ferguson's lifetime was by one George Bradfield, the husband of appellant Mary Bradfield. He testified that he had possession of them between 6 and 7 o'clock, September 25th, that:

"He (Ferguson) gave me three withdrawal slips at the time. They related to Blanch McCall, Floreine Walker and Mary Bradfield, and he gave me the bankbook and he gave me a mission to perform with reference to those withdrawal slips and the bankbook to have them cashed, transferred to the girls' account. He told me what to do, to give them the bankbook and one of the slips so they could identify it and take it over. Of course they would have to sign.

"*Q.* After that, did you carry out that mission?

"*A.* No, not until after he died, I went with the slips to the bank and they said they weren't good after his death under law of Michigan. * * *

"*Q.* Did you give the book and the slips at one time since you received it to Floreine Walker?

"*A.* I did.

"*Q.* Did you give the book and the slips at one time since you have received it to Blanch McCall?

"*A.* I did.

"*Q.* Did you give the books and the withdrawal slips at one time to Mary E. Bradfield?

"*A.* I did."

He subsequently testified that he had the withdrawal slips and the bankbook on the date of the funeral of Mr. Ferguson; that he had turned them over to appellants and that they gave them back to him. He also contradicted this, as follows:

"*Q.* You held them in your possession from that time (September 25th) until you turned them over to Pettiford on the night of   \*   \*   \*   (the funeral)?

"*A.* I did. I told Mrs. Ferguson when she sent him down to find out if there were money for funeral expenses that I had the bankbooks."

It is significant that nowhere did the witness definitely state that he turned the withdrawal slips and bankbook over to the appellants *before* the death of Mr. Ferguson. He admitted that after Ferguson's funeral he, together with his attorney, Pettiford, and appellant Floreine Walker, opened Ferguson's safe, but denied taking any records therefrom. There was testimony that Pettiford had said the assignments and bankbook were taken from Mr. Ferguson's personal safe after his funeral. There was also testimony to the contrary.

A careful review of the record shows that the testimony as to delivery of the withdrawal slips and bankbook to the appellants is in direct opposition and irreconcilable conflict. The circuit judge heard the testimony and saw the witnesses. In deciding the case the trial court concluded:

"The question for the court to determine is: Was this delivery of the assignment slips and passbook as described by George Bradfield absolute and complete so as to make it a proper and legal gift? The court heard the testimony of all of the defendants concerning the delivery of the assignment slips and the bankbook, and is of the opinion that the delivery as described by George Bradfield was not a complete and irrevocable one. The court does believe that these assignments and the moneys represented by them remained in the direct control of the deceased, Horace S. Ferguson, up to and including the time of his death.

"The testimony in this case clearly showed that these defendants were merely pawns of the deceased,

Horace S. Ferguson, and that they did what they were told by him. If the deceased had intended to give them a gift on the date stated, he certainly could have given them the cash.

"The court further believes that the manner in which these assignments were made, and the claimed delivery of the bankbook, of which the court is not completely convinced, indicated an attempt on the part of the deceased to make a testamentary disposition of his property without fully complying with the laws of the State."

The conclusion stated by Mr. Justice BUSHNELL in *Bankers Trust Co.* v. *Bradfield, supra,* and the quotation therein from *In re George L. Nadell & Co., Inc.,* 294 Mich. 150, are directly applicable to the instant case. On the question of fact as to delivery of the assignments and bankbook to the appellants during the lifetime of Ferguson, we agree with the foregoing conclusion reached by the trial court.

The record does not support appellants' argument and cases cited in support thereof referring to gifts *causa mortis.* Appellants' claims, as well as any testimony in support thereof, are based on the theory of gifts *inter vivos.* Bradfield was used by Mr. Ferguson as his agent to deliver the claimed gifts to appellants. The delivery was not consummated during Ferguson's lifetime. Appellants concede that delivery after his death would not constitute valid gifts *inter vivos.* We conclude that appellants have failed to establish by convincing proofs that there were valid assignments to them of any part of the bank account in question, delivered during the lifetime of the donor.

"To constitute a valid gift *inter vivos* there must be a gratuitous and absolute transfer of property from donor to donee, taking effect immediately, and fully executed by a delivery of the property by donor

and acceptance thereof by donee." *Geisel* v. *Burg* (syllabus), 283 Mich. 73.

Appellants' claim that Bradfield was trustee for their benefit, even though delivery was not consummated, is not tenable.

"If a gift was intended, but not validly consummated, it should not be perfected on the theory that a trust was created." *Loop* v. *DesAutell* (syllabus), 294 Mich. 527.

To establish a gift *inter vivos* and a delivery thereof, plaintiffs rely on declarations which their witness Bradfield testified were made to him by Ferguson.

"Evidence of declarations and admissions of the donor are not sufficient to establish a gift but are only admissible as corroborative of other testimony." *Molenda* v. *Simonson* (syllabus), 307 Mich. 139.

Appellants claim that because issue had been joined in the three law cases in which appellants were plaintiffs and the Detroit Bank was defendant, the court has no jurisdiction in the instant chancery case interpleading the Bankers Trust Company as the administrator of the Ferguson estate. The administrator was not a party in the three law cases and there is no merit to the claim. While the bill of complaint in this case was primarily filed by the Detroit Bank to enjoin the three suits at law, the Bankers Trust Company, as administrator, was interpleaded as a defendant. It filed an answer to the bill of complaint, asking that it be decreed to be the lawful owner of the bank account. Appellants also individually appeared and filed answers to the bill of complaint as well as to the claim made by the administrator. In their answers, each appellant prayed the benefit of a cross bill and asked for affirmative relief against the Detroit Bank, and

against the Bankers Trust Company as administrator. The chancery court had jurisdiction. 3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939 (4 Comp. Laws 1948, § 606.4 [Comp. Laws Supp. 1940, § 13944, Stat. Ann. 1947 Cum. Supp. § 27.545]); *Star Transfer Line* v. *General Exporting Co.*, 308 Mich. 86; *Gairing* v. *McClelland*, 311 Mich. 315.

Decree affirmed, with costs to appellee Bankers Trust Company as administrator.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.